Peter P. Brotzen - #53230 (Counsel for Service)
Gregory L. Anderson - #129931
Chantalle N. Zakarian - #276921
DWYER, DALY, BROTZEN & BRUNO, LLP
550 South Hope Street, Suite 1900
Los Angeles, California 90071-2632
Tel. (213)627-9300
Fax (213)624-1638

Attorneys for Plaintiff
ALLIANZ SIGORTA A.S.

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALLIANZ SIGORTA, A.S., <br><br> Plaintiff(s), <br><br> vs. <br><br> AMERITECH INDUSTRIES, INC., and EAGLE ENGINES <br><br> Defendant(s). | Case No. 2:15 - cv - 01665-MCE-AC <br><br> JOINT STATEMENT REGARDING DISCOVERY DISPUTE: MOTION FOR ISSUANCE OF LETTERS ROGATORY <br><br> Date: March 16, 2016 <br> Time: 10:00 a.m. <br> Place: Courtroom 26 <br> Magistrate Judge: Allison Claire |

TO THE HONORABLE MAGISTRATE JUDGE ALLISON CLAIRE:

The following Joint Statement re: Discovery Disagreement is offered to the Court in connection with Plaintiff's Motion for Issuance of Letters Rogatory Directed to the Supreme Court of Newfoundland and Labrador for inspection of the aircraft and engine in Goose Bay, Canada. [1]

---

[1] Plaintiff does not understand Local Rule 251 to apply to the subject motion and therefore brought a regular noticed motion. This Joint Statement is made as an accommodation to Defendant's counsel pursuant to later request.

-1-
JOINT STATEMENT REGARDING DISCOVERY DISPUTE: MOTION FOR
ISSUANCE OF LETTERS ROGATORY

1. **Details of the Conference or Conferences:**

   The parties have met and conferred via email and letter. Following the exchange of correspondence in January 2016 detailed in the Motion, defendant responded further by letter dated February 24, 2016 and Plaintiff likewise further responded. Copies of the February 2016 exchange of correspondence are attached hereto. The parties further met and conferred by exchanging drafts of this Joint Statement re Discovery Disputes.

2. **Statement of the Nature of the Action and its Factual Disputes:**

   (The declaration and Exhibits referred to herein are the filed in the Court Docket as documents 13-2 (declaration), 13-3 to 13-6 (exhibits 1-4))

   **A.    Allianz Insured the Subject Cessna Aircraft**

   This is an action in subrogation. Plaintiff ALLIANZ SIGORTA, A.S. ("ALLIANZ") is an insurance carrier doing business in Turkey. On August 27, 2014 ALLIANZ issued a policy of insurance to Korfez Hartacilik Planlama Ltd. STI, (Korfez") a Turkish limited liability corporation. The insurance policy provided coverage against loss or damage to a Cessna model T206H aircraft (FAA Registration No. N52263) that had been purchased by Korfez from a seller in the United States. (Exh. 1 docket 13-3) Korfez retained a pilot, Paul Eriksmoen to fly the Cessna aircraft from the United States to Turkey.

   **B.    The Aircraft Was Damaged When The Engine Failed In Flight**

   On August 30, 2014, while the aircraft was near the east coast of Canada, the engine suffered a catastrophic failure in flight after the pilot noted substantial amounts of oil covering the windshield of the aircraft and low oil pressure registering on the gauge. There was no airport nearby to land. The pilot made an emergency landing on the shore

on an inlet and was able to exit the aircraft. (Exh. 2 docket 13-4) [2/]

### C. The Damaged Aircraft Was Transported To Air Labrador At Goose Bay

Korfez reported the accident to ALLIANZ who retained a local company, McLarens to recover the aircraft and act as adjusters. McLarens' adjuster assigned to the matter, Norman White made arrangements to have the aircraft removed from the water and flown to the nearest suitable facility by a helicopter using a large sling. The 'nearest suitable facility' was Air Labrador located at Goose Bay, where the aircraft was stored during the post-accident investigation and damage estimates. That investigation revealed that one of the main seals of the engine was dislodged permitting the engine oil to leak out and causing the subsequent catastrophic failure in flight. ALLIANZ paid Air Labrador for storage of the Cessna aircraft at the Air Labrador hangar at Goose Bay airport from September to December 2014. (Exh. 3, docket 13-5)

### D. Allianz Initiates Subrogation Action Against Overhaul Company Eagle Engines

Following its investigation and damage estimates, ALLIANZ paid Korfez the estimated cost to repair the Cessna, approximately $275K (US). ALLIANZ then initiated this action in subrogation against Defendant AMERITECH INDUSTRIES, INC. doing business as EAGLE ENGINES ("EAGLE ENGINES"). ALLIANZ seeks to recover from EAGLE ENGINES in subrogation the amounts it paid for recovery and repair of the Cessna. ALLIANZ alleges herein that EAGLE ENGINES negligently overhauled and negligently represented the condition of the engine of the Cessna, in February 2014, just before Korfez purchased it. (See Complaint) EAGLE ENGINES denies that it acted

---

[2/] Mr. Eriksmoen died in a subsequent unrelated aircraft accident.

negligently and denies that the overhaul caused the catastrophic failure to the engine. (See Answer to Complaint)

### E. Cessna Has Not Been Repaired And Remains in Goose Bay

Korfez has not undertaken the repairs of the Cessna. Mr. White, on request from Korfez, sought to sell the damaged aircraft. Air Labrador told Mr. White that it was interested in purchasing the Cessna. Air Labrador made a "low ball" offer which was rejected by Korfez. ALLIANZ advised Mr. White that ALLIANZ would purchase the damaged engine from Air Labrador for use as evidence in this case, permitting Air Labrador to make a higher offer. However, Air Labrador eventually declined to make another offer.

In December 2015, ALLIANZ was advised by Mr. White that he had a second buyer interested in purchasing the Cessna from Korfez and that the buyer would be willing in turn to sell the damaged engine to ALLIANZ for use as evidence in this case. Upon communication to Korfez of the second buyer's offer to purchase the damaged Cessna, Korfez told Mr. White that it was no longer interested in selling the damaged aircraft.

The communication from Korfez to Mr. White indicates that Korfez disputes the payment of the cost of repair contending that the Cessna should have been declared a total loss resulting in payment of the larger "agreed value" $430K. While the email from Korfez stated "we have already applied to justice ... since we have applied to justice we can not decide about your offer until the court decision made," counsel for ALLIANZ herein has been unable to develop any further information regarding the purported dispute between Korfez and ALLIANZ. Given the indication from Korfez that some sort of legal action is ongoing, counsel for ALLIANZ has not made any further efforts to contact Korfez. (See declaration of Anderson, docket 13-2)

Mr. White has been in contact with Air Labrador continuously, although on unrelated matters. Mr. White advises that the Cessna is located in a tie down space controlled by Air Labrador, that no repairs have been undertaken, that the engine is still installed, and that parts removed from the aircraft during the post-accident investigation which were placed in a sealed box are also inside the Cessna. Mr. White stated that "Air Labrador have advised they do not want to look after the aircraft any more." (See Declaration of Anderson, docket 13-2)

3. **CONTENTIONS OF EACH PARTY AS TO EACH CONTESTED ISSUE**

I. **PLAINTIFF'S CONTENTIONS:**

Plaintiff contends the Court should issue the proposed letter rogatory (docket 13-7) as follows:

A. **Allianz Wants To Visually Inspect and Document The Condition Of The Aircraft And Engine**

ALLIANZ seeks to have its expert consultants undertake a <u>visual inspection and photographic documentation of the condition of the Cessna and the failed engine for use in supporting its allegations of negligence against EAGLE ENGINES. There will be no disassembly or the engine or aircraft and no alteration of their condition</u>. However, as the facts above show, the aircraft is in the possession of a non-party in Canada, Air Labrador who no longer wants to buy the aircraft nor to "look after it." The aircraft is owned by non-party Korfez, who cannot be contacted by counsel for ALLIANZ due to ethical considerations. ALLIANZ has contacted Pilip Earle, director and manager for Air Labrador at Goose Bay regarding the proposed inspection and Air Labrador has no objection to the inspection. Because Air Labrador has possession of the Cessna but not title, Air Labrador prefers to be served with a subpoena for the inspection. (See

Declaration of Anderson)

Although the failed engine and damaged aircraft are clearly relevant to this action and a visual inspection is appropriate under FRCP 34 and 45, this Court cannot compel non-party Korfez located in Turkey to make the aircraft available for inspection in Canada. Nor does this Court have authority to require non-party Air Labrador to make the aircraft and engine available for an inspection. ALLIANZ is reluctant to dispatch its experts to Goose Bay absent some legal compulsion that would require the inspection be allowed. Any voluntary permission to visually inspect the aircraft could be withdrawn once the experts arrived in Goose Bay resulting in tremendous wasted expense with no evidence to show for it. ALLIANZ has hired an attorney licensed in the province of Newfoundland and Labrador who advises that the Supreme Court of Newfoundland and Labrador is the proper court to issue a subpoena or other Order directing Air Labrador to make the Cessna available for inspection.

Air Labrador has no objection to the inspection, but prefers to be served with a subpoena or order because it does not have title to the Cessna. ALLIANZ is unable to determine the position of Korfez, but anticipates Korfez would not voluntarily make the aircraft available for an inspection given the ongoing dispute. Even if permission was granted, it could be withdrawn at any time and the problem ALLIANZ seeks to avoid - sending it's experts to Goose Bay only to be turned away - would exist. ALLIANZ has no way of precluding either Air Labrador or Korfez from disposing of the Cessna or its engine without notice, adding urgency to this request.

In the meantime, this Court has set a discovery cutoff of August 8, 2016.

**B.     Eagle Engines Wants To Inspect The Engine But Refuses to Cooperate**

ALLIANZ contacted counsel for EAGLE ENGINES Mr. Rose and Mr. Shaw, advising them that the engine remains in Air Labrador's possession. Counsel for ALLIANZ requested available dates from EAGLE ENGINES for the inspection in Goose

Bay in February or March 2016. Counsel for ALLIANZ also requested a stipulation from EAGLE ENGINES for this Court to issue a Letter Rogatory to the Supreme Court of Newfoundland and Labrador, or a representation whether or not EAGLE ENGINES would oppose this motion.

EAGLE ENGINES responded by serving Requests for Production under FRCP Rule 34 demanding that ALLIANZ produce the aircraft and engine in California. When questioned about these demands, EAGLE ENGINES counsel responded in part:

> "... I do object to your letters rogatory. I have officially requested that you make the engine and airframe available in California. If you are objecting to that request, do so in your response and then I guess we can take it up with the Judge if we can't work it out. I don't want my client paying money to send its experts and attorneys to Canada." (Exh. 4, docket 13-6)

ALLIANZ likewise does not *want to* send its experts to Goose Bay to inspect the engine, but *that is where the evidence is located.* It would compound the problem of the expenses involved in inspecting the Cessna in Goose Bay if the experts were dispatched to Goose Bay only to be turned away on arrival. Therefore, in order to ensure that there is a legal compulsion to permit the inspection, an Order of the local Canadian Courts is necessary. To obtain such an Order requires that this Court make a request to that Court.

### C. Letters Rogatory Are Appropriate under Canadian Law

A letter rogatory is a "document issued by one court to a foreign court." Black's Law Dictionary 778 (9th Ed. abridged 2009) In its international setting, "the term letters rogatory denotes a formal request from a court in which an action is pending, to a foreign court to perform some judicial act." 22 C.F.R.§ 92.54 Private parties, including foreign corporations "may seek the issuance of letters rogatory for use in both underlying civil

lawsuits and underlying criminal prosecutions." *In re Premises Located at 840 140th Avenue. NE* (9th Cir. 2011) 634 F.3d 557, 562

Congress has authorized federal courts to issue and to enforce letters rogatory. Rule 28(b) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1781(b)(2) authorize the District Courts to issue letters rogatory to enable a U.S. litigant to obtain non-party discovery in a foreign country. 28 U.S.C. § 1781(b)(2) also provides for "the transmittal of a letter rogatory or request directly from a tribunal in the United States to the foreign or international tribunal, officer or agency to whom it is addressed and its return in the same manner." In considering the issuance of letters rogatory, U.S. courts apply the discovery principles of Rule 26, and should issue letters rogatory "whenever it is determined on a case-by-case basis that their use will facilitate discovery." *Asis Internet Svc. v. Optin Global, Inc.* (N.D. Cal. June 29, 2007) 2007 US Dist LEXIS 50621

Canada is not a signatory to the Hague Convention on the Taking Of Evidence Abroad in Civil and Commercial Matters. [3/] Canada has no bilateral treaty with the United States regarding international discovery in civil matters. [4/] However, the Canada Evidence Act specifically provides that a court outside of Canada may seek the assistance of Canadian courts by serving letters rogatory upon the appropriate Canadian court. R.S.C. 1985, c. C-5 §§ 46, 51. [5/]

---

[3/] Per the US State Department website: http://travel.state.gov/content/travel/en/legal-considerations/judicial/country/canada.html.

[4/] Canada's response to a Questionnaire regarding the Hague Convention listing countries with whom it has treaties regarding international discovery: https://assets.hcch.net/upload/wop/2008canada20e.pdf

[5/] The full text of the Canada Evidence Act is available online at https://www.canlii.org/en/ca/laws/stat/rsc-1985-c-c-5/latest/rsc-1985-c-c-5.html

-8-
JOINT STATEMENT REGARDING DISCOVERY DISPUTE: MOTION FOR
ISSUANCE OF LETTERS ROGATORY

"46. (1) If, on an application for that purpose, it is made to appear to any court or judge that any court or tribunal outside Canada, before which any civil, commercial or criminal matter is pending, is desirous of obtaining the testimony in relation to that matter of a party or witness within the jurisdiction of the first mentioned court, of the court to which the judge belongs or of the judge, the court or judge may, in its or their discretion, order the examination on oath on interrogatories, or otherwise, before any person or persons named in the order, of that party or witness accordingly, and by the same or any subsequent order may command the attendance of that party or witness for the purpose of being examined, and for the production of any writings or other documents mentioned in the order and of any other writings or documents relating to the matter in question that are in the possession or power of that party or witness." R.S., 1985, c. C-5, s. 46(1); 1999, c. 18, s. 89.

Although Canada is not a signatory to the Hague Convention, the proposed Letter Rogatory accompanying this motion is modeled on and contains the information required for "letters of request" under the Hague Convention.

### D. This Court Should Issue the Letter Rogatory for Visual Inspection and Documentation of the Cessna and Engine by the Parties' Expert Consultants at Goose Bay Airport

ALLIANZ seeks the issuance of a Letter Rogatory directed to the Supreme Court of Newfoundland and Labrador requesting that the Canadian court make an order (subpoena) directing Air Labrador to permit the parties' expert consultants to visually inspect and document the condition of the Cessna T206H, FAA registration No. N52263, including the engine and any logbooks in Air Labrador's possession.

A visual and photographic inspection of the Cessna will not damage or alter the condition of the aircraft, but will permit the experts to undertake a first-hand look at the damaged aircraft and engine. The need for this inspection, particularly of the engine, is heightened by the fact that the pilot is not available to consult with or testify about the events leading up to the engine failure.

Given that the cause of the engine failure and resulting damage to the aircraft are issues in controversy in this action, this inspection falls within the scope of discovery found in FRCP Rule 26. If the Cessna were located in California, a subpoena requiring the production of the aircraft for a visual inspection would be appropriate under FRCP Rule 45.

Because the Cessna is located in Canada, any subpoena binding on Air Labrador will have to come from the Courts of Newfoundland and Labrador. Air Labrador has possession of the Cessna and engine at its facility in Goose Bay. Korfez initially sought to dispose of the Cessna by sale to Air Labrador. Air Labrador ended its negotiations for the Cessna (through Mr. White) in December 2015. Air Labrador stated that it no longer wishes to "look after" the Cessna. In response to an offer from a second salvager, Korfez has now indicated that it no longer wishes to sell the Cessna at present, but is retaining the aircraft citing a legal action against ALLIANZ over whether or not the aircraft should be considered a "total loss." Counsel for ALLIANZ has been unable to develop any additional information regarding a legal action between Korfez and ALLIANZ, and are reluctant to contact Korfez to seek permission to inspect the aircraft as Korfez is, in all likelihood, represented by counsel. ALLIANZ seeks to avoid dispatching its experts to far away Goose Bay and having them return without having inspected the aircraft. Air Labrador has no objection to the inspection assuming it is served with a subpoena for the inspection. The best way to meet these needs is to initiate a legal compulsion for access to the aircraft and that requires, as an initial step, the issuance of a letter rogatory from this Court to the courts of Newfoundland and Labrador.

The Cessna T206H engine is highly relevant evidence in this case. It is presently reachable through the Canadian courts, but it could be disposed of by either Air Labrador or Korfez at any time and without notice to the parties to this action. The inspection sought is a visual inspection and documentation only, which will not alter any evidence. The owner, Korfez, had indicated it wants to sell the wreckage, but has recently put that effort on hold but could change its mind again. In the meantime Korfez claims to have initiated legal proceedings regarding the insurance making contact to seek a voluntary inspection problematic. The third-party with possession of the Cessna no longer wants to "look after" it. The status of this evidence is clearly precarious. Even if arrangements were made to permit the inspection of the aircraft voluntarily, such permission could be withdrawn once the parties incur the expense of dispatching their experts to Goose Bay.

Therefore, ALLIANZ has shown good cause for issuance of the accompanying letter rogatory directed to the Supreme Court of Newfoundland and Labrador requesting that court's assistance in creating a legal compulsion on the part of Air Labrador to permit the inspection.

E.   **PLAINTIFF'S RESPONSE TO DEFENDANTS' CONTENTIONS BELOW:**

Defendants' opposition to the application for issuance of Letters Rogatory focuses on the rift between Plaintiff ALLIANZ and its insured Korfez. They are adverse. Korfez wants ALLIANZ to pay the full hull value of the aircraft and has initiated process in Turkey to obtain that result. ALLIANZ has paid the cost of repair as required and opposes Korfez's action. That leaves title to the aircraft with Korfez, who demands that ALLIANZ pay the full loss to obtain title. The aircraft and engine are in the possession of Air Labrador in Canada, who claims no interest other than possession. It is obviously a delicate position to ask the court in Canada to order Air Labrador to make the aircraft

available when it does not have title and the one who does have title is adverse to the parties before the court.

The reason why ALLIANZ seeks issuance of Letters Rogatory for a non-invasive visual inspection is to have some legal requirement that the inspection go forward. The reason why a visual only inspection is requested is *because Air Labrador has possession but not title* and the more aggressive an inspection sought the less likely the Canadian court is to compel Air Labrador to permit it.

### 1. Plaintiff Should Ask Korfez To Permit A Proper Inspection

Asking Korfez to permit any inspection will not result in any enforceable right to inspect the aircraft. Permission could be withheld, in which case the Letters Rogatory should be issued. Permission could be granted, or granted on conditions and such permission could be revoked at any time. The point of seeking Letters Rogatory is to have some assurance that the inspection will go forward when the consultants arrive in Goose Bay.

We know Korfez's position: ALLIANZ should pay the full hull loss value, take possession and title to the wreckage and dispose of it as it sees fit. There is no reason to think Korfez would have any other response to a request for a "proper" inspection.

### 2. The Inspection Should Be "Proper"

EAGLE ENGINES asks the Court to refuse to issue the Letters Rogatory claiming the visual inspection sought won't provide any useful information. [6/] EAGLE ENGINES is incorrect about the usefulness of the inspection. Much can be learned by visual inspection and taking measurements of this engine and components. For example, ALLIANZ contends that a large oil seal located at the front of the engine was improperly

---

[6/] If EAGLE ENGINES genuinely sees no gain in a visual inspection, nothing about this process requires it to attend.

-12-
JOINT STATEMENT REGARDING DISCOVERY DISPUTE: MOTION FOR
ISSUANCE OF LETTERS ROGATORY

installed by EAGLE ENGINES during the overhaul and became dislodged during normal engine operation resulting in the loss of engine oil and catastrophic failure of the engine in flight. Photographs of the engine show what appears to be the oil seal partly dislodged from its mounting surface.

The oil seal comes in two sizes, a standard size and a slightly larger size. Which size is used for a particular engine depends on the size of the opening of the crank case where it is seated. When the engine is new, the opening is the "standard" size and the proper seal is the "standard" size seal. If the opening of the crank case is worn or damaged, then it must be enlarged to the slightly larger size and the proper size oil seal is the larger size. **EAGLE ENGINES' records and discovery responses state that it used the "standard" size seal to overhaul the engine.**

EAGLE ENGINES' records show that the case halves for the subject engine were obtained by them from Nicksons Machine of Santa Maria, California, and that the *case halves were overhauled by Nicksons Machine*. In response to a subpoena, Nicksons Machine was unable to produce records regarding the case halves and the work it did to "overhaul" the case halves. The overhaul work by Nicksons Machine *may have required it to bore the oil seal opening to the larger size thus requiring the use of the larger seal*, not the "standard" size seal used by EAGLE ENGINES. By measuring the oil seal and the opening, ALLIANZ's consultants can determine if EAGLE ENGINES in fact used the standard size seal and whether or not the opening had been enlarged required the use of the larger seal.

If the opening in the crank case halves had been enlarged by Nicksons Machine and the standard seal was installed in the enlarged opening by EAGLE ENGINES, it is obvious why the seal became dislodged and Plaintiff's negligence claim is proved. If it is determined that the opening is over sized and the seal is over sized, then EAGLE ENGINES' records of the overhaul are inaccurate and its discovery responses are false.

To argue that the visual inspection sought by ALLIANZ would not reveal any useful information is simply wrong.

Further, if EAGLE ENGINES wants Letters Rogatory from this Court to request that the Canadian Court order Air Labrador, a non-party in bare possession of Korfez's aircraft, to make Korfez's aircraft available for EAGLE ENGINES to conduct a "proper" tear down inspection, then *EAGLE ENGINES should make that application.* ALLIANZ believes the less invasive visual inspection is more likely to receive approval of the Canadian court than a full tear down and therefore ALLIANZ requests Letters Rogatory for the visual inspection.

**II. Defendant's Contentions:**

Defendant contends that Plaintiff's request for letters rogatory is inappropriate and inadequate for the following reasons:

1. **Plaintiff seeks a visual inspection involving "no disassembly of the engine or the aircraft." Looking only at the casing of the engine can provide nothing more than speculation as to the cause(s) of the alleged engine failure.**

In order for Ameritech to defend the present action, the engine and aircraft must be inspected in a manner that can accurately and reliably identify any mechanical failure or failures that might have contributed to the crash. Simply looking at the casing of the engine cannot identify the cause or causes of an engine failure. Standard procedure in aviation litigation is to have all counsel and their experts present throughout a disassembly of the engine. Similarly, the aircraft is disassembled to the extent necessary to assess the damage incurred in the accident. Occasionally destructive testing of a component is necessary.

However, more often disassembly is all that is necessary to reliably pinpoint the cause of failure.

In essence, Plaintiff wants to engage two courts in two nations to undertake a process the United States Supreme Court has described as "complicated, dilatory, and expensive" for the purpose of achieving discovery that is unreliable, speculative and therefore prejudicial. *Industrielle Aerospatiale v. U.S. Dist. Ct. for the S. Dist. Of Iowa*, 482 U.S. 522, 531 (1987). The prejudicial nature of the request is further exacerbated by the fact that the Allianz already got one bite at the apple – the opportunity to inspect the engine and aircraft in whatever manner they saw fit prior to filing suit. If this Court were to grant its request, Defendant alone would be limited to an external visual inspection of the casing of the engine.

2. **Plaintiff argues that it can achieve nothing more than a one-time external visual inspection because it does not own the engine or the aircraft.**

   **Defendant responds: If Korfez brought this action against Ameritech, it would have to produce the engine and aircraft for a standard disassembly inspection and possible component testing. Allianz - stepping into the shoes of Korfez and having no greater rights as subrogee than Korfez - must produce the engine for disassembly inspection and component testing.**

Subrogation is well-settled legal territory. Subrogation is a substitution of another person in place of the original claimant. "In the insurance context, subrogation takes the form of an insurer's right to be put in the position of the insured for a loss that the insurer has both insured and paid." *Sompo Japan Ins. Co. of America v. Action, Exp.*, LLC, 19 F. Supp.3d 954, 957 (C.D. Cal. 2014). "An insurer, in its role as subrogee, has no greater rights than those possessed by its insured, and its claims are subject to the same defenses. *Id.* at 958.

-15-
JOINT STATEMENT REGARDING DISCOVERY DISPUTE: MOTION FOR
ISSUANCE OF LETTERS ROGATORY

Plaintiff argues, "If Eagle Engines wants Letters Rogatory . . . to make Korfez's aircraft available . . to conduct a "proper" tear down inspection, then Eagle Engines should make that application." This statement highlights the prejudicial nature of Plaintiff's approach to discovery in this matter by insisting Defendant accomplish discovery Plaintiff does not believe is possible and because it fails to recognize that *Plaintiff is responsible for bringing forth the evidence necessary to prove it is entitled to recovery from Ameritech.* Defendant has a reasonable expectation that a plaintiff alleging their engine failed will produce the engine for proper inspection and testing.

**3. Insured's lack of cooperation does not excuse Plaintiff's obligation to produce critical evidence.**

Plaintiff paid a claim pursuant to an insurance contract with Korfez but is not requiring Korfez to meet its contractual obligations to cooperate in Allianz' subrogation efforts. The insurance policy between Allianz and Korfez states, "Upon an indemnity being given or a payment being made by the Insurers under this Policy, they shall be subrogated to the rights and remedies of the Insured who shall co-operate with and do all things necessary to assist the Insurers to exercise such rights and remedies." The Policy, Section IV(C)2; ALLIANZ 0037; *Pruyn v. Agri. Ins. Co.,* 42 Cal.Rptr.2d 295, 301 (2nd Dist. Div. 3, 1995) (Breach of a cooperation clause in liability policy gives insurer defense to action on policy, provided prejudice is shown.); *Hall v. Travelers Ins. Co.*, 15 Cal. App.3d 304, 309 (5th Dist. Cal. 1971) (A failure to cooperate that results in substantial prejudice to the insurer constitutes a material breach of the policy.).

Neither party appears to dispute that the engine is the central piece of evidence in this dispute. In fact, Plaintiff stated in the Rule 26(f) Joint Report (Document 8) that it would make the engine available in California. Whatever complications have arisen since, Plaintiff's attempt to issue letters rogatory is a poor solution to its own problems with its

insured. Plaintiff cannot attempt to solve its problems by limiting Ameritech's ability to mount a defense.

Dated: March 9, 2016

DWYER, DALY, BROTZEN & BRUNO, LLP

By: /s/ Peter P. Brotzen
Peter P. Brotzen
Gregory L. Anderson
Attorneys for Plaintiff, ALLIANZ SIGORTA A.S.

Dated: March 9, 2016

ROSE WALKER LLP

By: /s/ Bryan P. Rose
Bryan Rose
Martin E. Rose
Attorneys for Defendants AMERITECH INDUSTRIES, INC. and EAGLE ENGINES