UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALLIANZ SIGORTA, S.A., <br><br> Plaintiff, <br><br> v. <br><br> AMERITECH INDUSTRIES, INC., <br> EAGLE ENGINES, <br><br> Defendants. | No. 2:15-cv-01665-MCE-AC <br><br><br> **MEMORANDUM & ORDER** |

On August 5, 2015, Plaintiff Allianz Sigorta, S.A. filed its Complaint against Defendants Ameritech Industries, Inc. and Eagle Engines (collectively, "Defendants" or "Eagle Engines").[1]  Compl., ECF No. 1.  Plaintiff, an insurance company, insured the aircraft that is the subject of the present litigation.  Defendant Eagle Engines is—or was at the time of the incident—a division or subsidiary of Defendant Ameritech.  Eagle Engines performed an overhaul of the aircraft's engine shortly before the aircraft was forced to an emergency landing due to engine failure in flight.  Plaintiff's First Amended Complaint alleges claims of negligence, negligent misrepresentation, negligence per se, and unfair business practices under California's Business and Professions Code § 17200 et seq., stemming from Defendant's alleged failure to adequately overhaul the subject engine.  Plaintiff additionally seeks punitive damages.

---

[1] For ease of reference, the Court will refer to Defendants throughout as "Eagle Engines" since that is the acting business name and the party performing the engine overhaul.

1

Presently before the Court are the parties' Motions for Summary Judgment. ECF Nos. 98 ("Pl's Mot.") and 100 ("Defs' Mot."). In its Motion, Plaintiff moves for summary judgment of the issues of negligence and causation, arguing that Eagle Engines has admitted to certain statutory violations, which make Defendants' negligence per se in this matter undisputed. For its part, Defendants move for summary judgment of all claims, arguing that Plaintiff has not established causation because all three of its experts should be excluded as providing unreliable expert opinions. Each party has filed a motion, an opposition, and a reply. <u>See</u> ECF Nos. 98 ("Pl's Mot."), 103 ("Def's Opp."), 106 ("Pl's Reply"), 100 ("Def's Mot."), 107 ("Pl's Opp."), and 108 ("Def's Reply").

As a preliminary matter, the Court again notes with disapproval the parties' insistence on filing multiple briefs addressing the same limited issues. The Court previously struck the parties' motions for summary judgment, in part because the Court's

> scheduling order . . . contemplates a maximum of six papers filed between the parties, assuming both parties timely move for summary judgment of separate issues, and both parties file subsequent oppositions and replies. Alternatively, it contemplates four total filings in the event that one party moves for summary judgment, the other opposes and cross-moves in a single document, the initial moving party then files a reply and cross-opposition (again, a single filing), and the cross-movant files a final reply to the cross-motion. Each filing is limited to a total of 20 or 10 pages.

ECF No. 80 (second emphasis added). The parties have limited their filings to six this time around, but have still managed to violate the intent of the scheduling order by filing six briefs that all address the same issue. The Court elects to address the merits of the parties' motions below, but the parties are cautioned that future failures to comply with Court orders will result in sanctions.

For the reasons set forth below, Plaintiff's and Defendants' respective Motions for Summary Judgment, ECF Nos. 98 and 100, are DENIED.

///

///

///

**BACKGROUND**

As relevant to the pending motions, the basic background facts of this case are largely undisputed. The present action is an action in subrogation. Plaintiff is a Turkish insurance carrier that issued a policy to Korfez, a Turkish LLC that purchased the subject aircraft from a seller in the United States. The policy provided coverage against loss or damage to the subject aircraft.

In January 2014, Eagle Engines completed an overhaul of the subject aircraft's engine. ECF No. 107-1, ("SUF"), No. 1. As part of that overhaul, Eagle Engines installed a crankshaft oil seal that was not approved by the Federal Aviation Administration ("FAA") for use in that specific engine model. SUF No. 2. Eagle Engines then inspected the subject engine, performed a test run, and determined it to be airworthy before returning it to service.[2] SUF No. 4. The subject engine was then installed in the aircraft by another aviation maintenance provider. SUF No. 5. That provider subsequently conducted an inspection and determined the installation was airworthy. SUF No. 6. In August 2014, the subject aircraft was being flown by the insured's retained pilot when the pilot reported engine problems and had to undertake an emergency landing of the aircraft off the coast of Canada. SUF Nos. 9, 11.

The parties dispute the semantics of the work done by Plaintiff's experts in examining the aircraft and its various engine parts, but what they actually did in the course of their investigation is not disputed. See SUF Nos. 16-22. No disassembly of the engine took place. SUF No. 16. Plaintiff's expert Mr. Magginetti performed a visual inspection of the aircraft and engine, including the cylinders, and the piston and rings from one cylinder. SUF Nos. 17-18. Engine monitoring data was not retrieved. SUF No. 19. The pilot has not been interviewed or deposed. SUF No. 20. Plaintiff's expert Dr. Fowler tested a sealant sample from the crankshaft oil seal, and that sample showed

---

[2] Allianz disputes that the engine was actually airworthy, but it is not disputed that Eagle Engines made a determination that it was. See ECF No. 107-1.

that an approved sealant was used. SUF No. 21. The experts also inspected the oil seal and adhesive, and compared it to an exemplar oil seal. SUF No. 22.

**STANDARDS**

### A. Summary Judgment

The Federal Rules of Civil Procedure provide for summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses. Celotex, 477 U.S. at 325.

Rule 56 also allows a court to grant summary judgment on part of a claim or defense, known as partial summary judgment. See Fed. R. Civ. P. 56(a) ("A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought."); see also Allstate Ins. Co. v. Madan, 889 F. Supp. 374, 378-79 (C.D. Cal. 1995). The standard that applies to a motion for partial summary judgment is the same as that which applies to a motion for summary judgment. See Fed. R. Civ. P. 56(a); State of Cal. ex rel. Cal. Dep't of Toxic Substances Control v. Campbell, 138 F.3d 772, 780 (9th Cir. 1998) (applying summary judgment standard to motion for summary adjudication).

In a summary judgment motion, the moving party always bears the initial responsibility of informing the court of the basis for the motion and identifying the portions in the record "which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968).

1    In attempting to establish the existence or non-existence of a genuine factual
2    dispute, the party must support its assertion by "citing to particular parts of materials in
3    the record, including depositions, documents, electronically stored information,
4    affidavits[,] or declarations . . . or other materials; or showing that the materials cited do
5    not establish the absence or presence of a genuine dispute, or that an adverse party
6    cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The
7    opposing party must demonstrate that the fact in contention is material, i.e., a fact that
8    might affect the outcome of the suit under the governing law. Anderson v. Liberty Lobby,
9    Inc., 477 U.S. 242, 248, 251-52 (1986); Owens v. Local No. 169, Assoc. of W. Pulp and
10   Paper Workers, 971 F.2d 347, 355 (9th Cir. 1987). The opposing party must also
11   demonstrate that the dispute about a material fact "is 'genuine,' that is, if the evidence is
12   such that a reasonable jury could return a verdict for the nonmoving party." Anderson,
13   477 U.S. at 248. In other words, the judge needs to answer the preliminary question
14   before the evidence is left to the jury of "not whether there is literally no evidence, but
15   whether there is any upon which a jury could properly proceed to find a verdict for the
16   party producing it, upon whom the onus of proof is imposed." Anderson, 477 U.S. at 251
17   (quoting Improvement Co. v. Munson, 81 U.S. 442, 448 (1871)) (emphasis in original).
18   As the Supreme Court explained, "[w]hen the moving party has carried its burden under
19   Rule [56(a)], its opponent must do more than simply show that there is some
20   metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586. Therefore,
21   "[w]here the record taken as a whole could not lead a rational trier of fact to find for the
22   nonmoving party, there is no 'genuine issue for trial.'" Id. at 587.
23          In resolving a summary judgment motion, the evidence of the opposing party is to
24   be believed, and all reasonable inferences that may be drawn from the facts placed
25   before the court must be drawn in favor of the opposing party. Anderson, 477 U.S. at
26   255. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's
27   obligation to produce a factual predicate from which the inference may be drawn.
28   ///

Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898 (9th Cir. 1987).

### B. Daubert[3]

The Court "must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." Daubert v. Merrell Dow Pharmaceuticals, 509 U.S. 579, 589 (1993); see also Kumho Tire Co. v. Carmichael, 526 U.S. 137, 141 (1999) (clarifying that the court's role extends not only to "scientific" expert testimony, but also to testimony based on technical or other specialized knowledge). "This entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue … Many factors bear on the inquiry." Daubert, 509 U.S. at 592-93.

Federal Rule of Evidence 702 was amended in 2000 in response to the Supreme Court's Daubert and Kumho decisions. That rule provides as follows:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, expert training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

The objective of the court's gatekeeping function as now articulated in Rule 702 "is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." Kumho, 526 U.S. at 152. The court has "considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." Id.; see also Hangarter v. Prrovident Life & Acc. Ins. Co., 373 F.3d 991, 1018 (9th Cir. 2004) (wide latitude

---

[3] Defendants have not filed a separate Daubert motion, but because Defendants' Motion for Summary Judgment is premised on the exclusion of Plaintiff's experts under Daubert, the Court relies on the Daubert standard herein.

6

afforded to the court in determining whether expert testimony should be admitted and in determining how to test reliability). Notably, "trial courts are not compelled to conduct pretrial hearings in order to discharge the gatekeeping function." United States v. Alatorre, 222 F.3d 1098, 1100 (9th Cir. 2000); see also United States v. Gadson, 763 F.3d 1189, 1202 (9th Cir. 2014).

**ANALYSIS**

**A. Plaintiff's Motion**

Plaintiff seeks summary judgment on the issues of causation and negligence. Specifically, Plaintiff argues that there is no dispute that Eagle Engines (1) installed an unauthorized aftermarket part, (2) failed to follow the manufacturer's instructions for installation of the part, and (3) exercised its authority to return the engine to service despite that the engine was not airworthy due to errors (1) and (2), all in violation of the Federal Aviation Regulations ("FARs"). See 14 CFR §§ 43.13, 145.201, 145.213. Plaintiff alleges that these violations constitute negligence per se, and that the negligence of Eagle Engines caused the aircraft accident. See Notice of Mot., ECF No. 98, at 2.

It is undisputed that Eagle Engines installed a crankshaft oil seal that was not approved for use on the subject engine model. SUF No. 2. It is also undisputed that the installation of an unauthorized part is a violation of the FARs,[4] and that Eagle Engines's authorization of the engine for return to service with the unauthorized part also violated the regulations. 14 CFR §§ 43.13, 145.201. Defendants also do not dispute that a violation of the FARs generally provide the basis for negligence per se. See

///

---

[4] Defendants dispute Plaintiff's second ground for a violation of the FAR—that Eagle Engines did not follow manufacturer's instructions for installation. Given the Court's ruling below regarding causation, it need not determine whether Defendants' evidence in support of their opposition is sufficient to survive summary judgment.

7

Management Activities, Inc. v. U.S., 21 F. Supp. 2d 1157, 1175 (C.D. Cal. 1998), citing, inter alia, Rudelson v. U.S., 602 F.2d 1326 (9th Cir. 1979).

As Defendants point out, however, the presumption of negligence per se arises only when: (1) the defendant violated a statute; (2) the violation proximately caused the plaintiff's injury; (3) the injury resulted from the kind of occurrence the statute was designed to prevent; and (4) the plaintiff was one of the class of persons the statute was intended to protect. "The first two elements are normally questions for the trier of fact and the last two are determined by the trial court as a matter of law." Jacobs Farm/Del Cabo, Inc. v. Western Farm Services, Inc., 190 Cal. App. 4th 1502, 1526 (2010). While Plaintiff has established that there is no dispute regarding Defendants' violation of at least two statutes, there remain disputed questions of material fact as to causation—discussed in detail below—that preclude summary judgment.

More specifically, Plaintiff's experts (addressed below) opine that Eagle Engines is ultimately at fault, whereas Defendants' expert concludes that without a teardown inspection, no opinion as to cause can reliably be made. This is not a matter of an opinion versus a lack of opinion, as Plaintiff argues. Rather, Defendants' position is that any number of things could have caused the accident and no one has enough information to render a single conclusion. That itself is an opinion, and is enough to raise a triable issue of material fact, making summary judgment inappropriate.

Additionally, even if Plaintiff were to successfully establish that there are no disputed questions of fact related to their negligence per se claim, the presumption of negligence can be rebutted if Defendants show that in violating the FARs, it "did what might reasonably be expected of a person of ordinary prudence, acting under similar circumstances who desired to comply with the law." Cal. Evid. Code § 669(b)(1). This is an additional question of fact that must be presented to the trier of fact and is inappropriate on summary judgment. Plaintiff's Motion for Summary Judgment, ECF No. 98, is consequently DENIED.

///

**B.     Defendants' Motion**

Defendants' Motion (ECF No. 100) and their Opposition to Plaintiff's Motion (ECF No. 103), essentially boil down to a single argument: that Plaintiff has not and cannot establish causation because its experts' opinions should be excluded as unreliable.[5] Defendants argue that "[w]ithout a teardown inspection [of the engine], opinions as to causation are nothing but speculation." Defs' Mot. at 3. If Plaintiff's experts' opinions as to causation are excluded as unreliable, then Plaintiff has indeed failed to set forth any evidence of causation, and summary judgment of all claims would be appropriate.

The Court disagrees, however, that Plaintiff's experts are wholly unreliable. Rather, the Court finds that the claimed problems with the experts' opinions, discussed in more detail below, go to the weight of those opinions and not to their admissibility. Such a determination of weight should be left to the trier of fact, and there being a genuine dispute of fact between the parties as to the cause of the accident, summary judgment of Plaintiff's claims is inappropriate and Defendants' Motion is DENIED.

**1.     Greg Hein**

Hein's opinions are offered to eliminate pilot error as a potential cause of the engine failure and/or crash. Defendants claim Hein has no reasonable factual basis for his opinion concluding that the pilot's performance was positive and in no way caused the accident. Specifically, Defendants argue that Hein relies on nothing at all to claim the pilot acted reasonably before noticing a burning smell in flight, and relies only on the pilot's self-serving hearsay report concerning his actions after he smelled the burning odor.

Plaintiff counters that the pilot's contemporaneous report is reliable, that Hein also reviewed emails from the pilot that detail the events of the flight and corroborate much of his written report, and that an expert can rely on hearsay in any event (something Defendants concede). Plaintiff additionally asserts that Hein did not rely solely on the

---

[5] Defendants do not assert that any of the experts are unqualified, nor do they argue the subjects of the experts' opinions are irrelevant. As a result, the Court does not address these issues and focuses only on the reliability of the opinions.

9

pilot's report in any event and also looked at other factors such as the pilot's qualifications and preparation. While Hein's sources may not be strong, the Court has trouble understanding what a better source might be under the circumstances, where the now-deceased pilot cannot be interviewed or deposed. Nor does the Court find it appropriate to exclude Hein's opinions as wholly unreliable. Rather, the trier of fact will determine the weight to be afforded to Hein's opinions, and Defendants are free to cross-examine Hein or present contrary evidence at the appropriate time.

### 2. Steven Magginetti

Magginetti's opinions are offered to establish the cause of the engine failure. Defendants claim Magginetti uses no known or documented methodology, provides little description of his methodology, and "at times uses methods that are overtly unreliable." Defs' Mot. at 9. They further assert that Magginetti's opinions are conclusory, do not cite to an appropriate testing, and fail to rule out other causes of oil loss and/or engine failure.

Plaintiff counters that Magginetti has reviewed all maintenance records and logbooks, all insurance reports, the pilot's report and emails, photographs and videos of the aircraft and engine, all discovery and depositions, the manufacturer's instructions, Eagle Engine's overhaul records, and an exemplar of both the standard oil seal and an exemplar of the unauthorized oil seal. He also interviewed the adjuster who investigated the accident and performed a visual inspection of the engine. Pl's Opp., at 13. As stated above, no teardown inspection was ever performed, but Magginetti's opinions are based on his own knowledge and experience, coupled with his research into the accident and his visual inspection of the engine. As with Hein, a trier of fact may find Magginetti's opinions are based on weak evidence, and may not be persuaded by his analysis. Nonetheless, these are questions of weight, not of admissibility, and the Court is not inclined to exclude Magginetti's opinions.

///
///

### 3. Dr. Gary Fowler

Dr. Fowler's opinions are also offered to establish the cause of the engine failure. Defendants argue that Dr. Fowler performed only one test: a test of a sample of the sealant used on the engine's crankshaft oil seal, and that test revealed that an approved and appropriate sealant was in fact used. Yet Dr. Fowler affirms many of Magginetti's opinions regarding causation. Dr. Fowler also expresses an opinion that the oil seal was partially dislodged due to one or more of three possible causes, all of which would be Defendants' fault. Defs' Mot. at 14. Defendants assert that Dr. Fowler's opinions are just three possible theories based on speculation, and further note that Fowler concedes one of those theories cannot be confirmed without a teardown inspection.

Plaintiff argues that Dr. Fowler attended the visual inspection of the engine by videoconference and was able to view "[m]any of the internal parts and components," as well as the inside of the cylinder that fell off the engine. Dr. Fowler reviewed other materials as well. As with Magginetti, the strength of the basis for Dr. Fowler's opinions goes to the weight of those opinions, not their admissibility. The Court therefore declines to exclude Dr. Fowler's opinions.

### CONCLUSION

For the reasons set forth above, Plaintiff's Motion for Summary Judgment, ECF No. 98, and Defendants' Motion for Summary Judgment, ECF No. 100, are DENIED.

IT IS SO ORDERED.

Dated: September 6, 2018

MORRISON C. ENGLAND, JR
UNITED STATES DISTRICT JUDGE